# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | | |
|---|---|---|
| REBECCA WOODRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00243-TWP-DML |
| | ) | |
| JACKSON COUNTY, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY DENYING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Jackson County, Indiana's ("Jackson County") Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. (Filing No. 14.) Plaintiff Rebecca Woodring ("Woodring") is a resident of Jackson County, Indiana. Her Complaint alleges that a nativity scene has been placed on the Jackson County Courthouse front lawn every December for many years in violation of the First Amendment's Establishment Clause. She asks the Court to issue a permanent injunction prohibiting Jackson County from displaying the nativity scene at the Courthouse. (Filing No. 1.) For the following reasons, Jackson County's Motion to Dismiss is **DENIED**.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Woodring as the non-movant. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The Jackson County Courthouse (the "Courthouse") faces the main street in the town of Brownstown, Indiana. (Filing No. 1 at 1.) The Courthouse contains government offices and is

surrounded by a large lawn with a sidewalk that leads to the Courthouse entrance. *Id.* at 2. Other than a flag pole, the lawn is usually bare during most of the year. *Id.*

However, for many years in the month of December, Jackson County has allowed a nativity scene to be placed on the lawn.[1] *Id.* at 1-2. The current version of the nativity scene shows the figures of the nativity "outlined in white lights that are illuminated during the day and evening hours." *Id.* at 2. There is a manger with the baby Jesus, Mary and Joseph. *Id.* at 2-3. Close to the manger are two angels with upstretched horns announcing the birth, and on either side of the sidewalk leading to the Courthouse are Magi bearing gifts with animals. *Id.* at 3. This crèche tells the story of the birth of Jesus as outlined in the New Testament, and thus is one of the preeminent symbols of Christianity. *Id.*

In 2018, Jackson County received a letter from the Freedom from Religion Foundation complaining about the nativity display. *Id.* In response, it placed a figure of Santa Claus and figures of carolers to the far side of the display, away from the sidewalk where the crèche is located. *Id.* Woodring asserts that these secular symbols are far enough away from the nativity scene that they are not part of the display, and even if they were part of the display, it would appear that Santa Claus and a band of carolers are praising the birth of the baby Jesus. *Id.* Attached to Woodring's Complaint is a photograph of the nativity scene and the secular figures on the Courthouse lawn as they were arranged in December 2018. ([Filing No. 1-1](#).)

Woodring resides in Jackson County. ([Filing No. 1 at 3](#).) She travels multiple times per week to Brownstown where she passes the Courthouse on Main Street. *Id.* at 4. She objects to the nativity scene display because she believes the Jackson County government is endorsing religious faith.

---

[1] Woodring alleges the nativity scene contains "the baby Jesus, Mary, Joseph, the Magi, animals, and trumpeting angels." ([Filing No. 1 at 1](#).)

In December 2018, Woodring filed her Complaint in this Court requesting a permanent injunction "prohibiting the defendant from displaying the crèche and Nativity scene on the lawn of the Jackson County Courthouse." *Id.* at 4. She also asks the Court to award her costs and attorneys' fees pursuant to 42 U.S.C. § 1988. *Id.* Jackson County moved to dismiss on February 25, 2019 pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).

To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.　**DISCUSSION**

Jackson County makes one argument in support of its Motion to Dismiss. The First Amendment's Establishment Clause as interpreted by the Supreme Court of the United States and the United States Court of Appeals for the Seventh Circuit does not prohibit government displays that include both secular and non-secular elements. (Filing No. 15 at 13.) Woodring admits that the display contains representations of Santa Claus and Christmas carolers as well as a nativity scene. (Filing No. 1 at 3.) Jackson County argues this fact conclusively establishes that the display is Constitutional as a matter of law and thus Woodring's Complaint must be dismissed.

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion." The jurisprudence interpreting this clause is, to put it mildly, muddled. The most established and best-known interpretive test for the Establishment Clause, articulated in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), held that a government action is constitutional if (1) it has a secular purpose, (2) it has a principal or primary effect that neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion. *Id.* at 612-13. But the *Lemon* test is and has been controversial at both the Supreme Court of the United States and lower courts. Recently, a plurality of the Supreme Court declared, "[i]f the *Lemon* Court thought that its test would provide a framework for all future Establishment Clause decisions, its expectation has not been met. In many cases, the Court has either expressly declined to apply the test or has simply ignored it." *Am. Legion v. Am. Humanist Assoc.*, 139 S. Ct. 2067, 2080 (2019) (citations omitted). In *American Legion*, a majority of the Supreme Court

opined that the *Lemon* test was particularly ill-suited to resolve Establishment Clause cases that involve "the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations." *Id.* (Footnote omitted).

Although it frowns upon the *Lemon* test, *American Legion* does not offer its own test for dealing with these types of cases. Thus, the Court looks to *Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038 (7th Cir. 2018), in which the Court of Appeals for the Seventh Circuit determined the constitutionality of a public high school's musical holiday show that contained a nativity scene and Christian hymns performed by students. In that case, the Seventh Circuit analyzed the contested government action under three different tests advanced at one time or another by the Supreme Court: the endorsement, coercion, and purpose tests.

The endorsement test originated in a concurrence by Justice O'Connor and was approved by a majority of the court a few years later. *Lynch v. Donnelly*, 465 U.S. 668, 691-92 (1984) (O'Connor, J., concurring); *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 592-94 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 572 U.S. 565 (2014). The test asks whether a government action "communicates a government's endorsement of a religion or a particular religious belief." *Concord Community Schools* at 1046. To determine whether a practice endorses religion, the court must look at the totality of the circumstances surrounding the challenged conduct from the perspective of a reasonable observer. *Id.* (citation omitted). "The reasonable observer is aware of a situation's history and context and encompasses the views of adherents and non-adherents alike." *Id.*

As the Seventh Circuit has said, "the story of the nativity is a core part of Christianity, and it would be silly to pretend otherwise." *Id.* For that reason, many but not all nativity scenes "run a serious risk of giving a reasonable viewer the impression of religious endorsement." *Id.* The

5

Court has no doubt that a lone nativity scene of this size on prominent display on government property would be one of those nativity scenes that gives a reasonable viewer the impression of religious endorsement. Here, however, the nativity scene is not on its own. It is accompanied by two other arguably secular symbols of Christmas: Santa Claus and a group of Christmas carolers.

Nevertheless, two facts alleged in Woodring's Complaint persuade the Court that this nativity scene would give a reasonable observer the impression that the government is endorsing a religion. The first of those facts is the geography of the display. According to the Complaint, Santa and the carolers are placed "to the far side of the display, away from the side of the sidewalk where the crèche is located." ([Filing No. 1 at 3](Filing No. 1 at 3).) The attached photograph confirms that the crèche appears to be the vast majority of the display because the crèche is arranged to straddle the sidewalk, making it appear much larger than the solitary Santa figure. ([Filing No. 1-1](Filing No. 1-1).) The carolers appear to be placed in the back, lessening the attention they would draw from a reasonable observer.

Jackson County argues that the display includes only "**one** religious symbol (a Nativity scene) and **two** secular symbols (Santa Claus and carolers)." ([Filing No. 15 at 6](Filing No. 15 at 6)) (emphasis in original). But the Court is less concerned with the raw number of symbols than it is with the actual appearance of the display, in which the crèche seems to be much larger than the secular symbols. Jackson County's accounting of the figures is suspect, for there appear to be about four secular characters (the Santa figure and three carolers), but perhaps triple that number of figures related to the crèche (there is the baby Jesus, Mary, Joseph, and the manger itself, as well as two cherubs, multiple sheep, a camel, what appears to be a donkey, and other figures that appear to be the wise men bearing gifts). Those numbers may not be exactly accurate, as a large tree blocks a portion

of the display in the photograph (Filing No. 1-1), but at this stage of the litigation the Court assumes any undetermined facts are favorable to Woodring as the non-movant.

Of course, the Complaint could be providing a creative description of the scene and a photograph taken from a different spot might give a different impression of the display. But on a 12(b)(6) motion, the Court is obligated to take the Complaint at its word, and as it describes the display, the nativity scene seems to be the thrust and the secular symbols look to have been added as afterthoughts.

That brings the Court to the second decisive fact. The history of this display is that, for many years, it was only a nativity scene. But just recently, after a complaint from the Freedom from Religion Foundation, Jackson County added some secular symbols as a palliative. "The reasonable observer is aware of a situation's history and context." *Concord Community Schools* at 1046. The addition of some less prominent secular symbols around the fringes of the display would not be enough to counteract the impression a reasonable observer would have gotten from seeing the nativity display placed on the lawn of the Courthouse for years, as the Complaint alleges it has been. (Filing No. 1 at 1.) The Court has no doubt that a sufficient balancing between secular and non-secular elements could bring this display into harmony with the First Amendment despite its history, but the Court cannot say as a matter of law that balancing has occurred here. Thus, the display as described in the Complaint fails the endorsement test.

The second approach the Seventh Circuit considered in *Concord Community Schools* is the coercion test. This test asks whether the government has applied coercive pressure to support or participate in religion. *Concord Community Schools* at 1048. The test is more often used for things like prayer in school, where someone is being encouraged to perform a religion he or she may not wish to practice. Leaving aside whether the coercion test is appropriate for this

government action, the Court is convinced that the nativity display at issue passes the test. It is a visual celebration of the birth of Jesus Christ. It does not require citizens of Jackson County to do anything but look at it, and perhaps not even that. Woodring alleges that because she is a resident of Jackson County "she travels, multiple time (sic) a week, to Brownstown where she passes the Courthouse on Main Street and is forced to come into direct and unwelcome contact with the Nativity scene there." ([Filing No. 1 at 4](#).) The Court believes that unwelcome contact with a religious symbol falls short of actual coercion—Woodring and other Jackson County residents are not asked or pressured to participate in Christian activities. However, of these first two tests, the endorsement test is a better framework for determining the constitutionality of this display.

The last test is the purpose test—a practice is unconstitutional if it lacks a secular objective. *Concord Community Schools* at 1049. The Court defers to a government's statement of its own aims, but the professed objective cannot be a sham or secondary to a religious goal. *Id.* Jackson County asserts that "The County Has A Secular Purpose In Erecting the Challenged Display," but it does not identify that purpose. ([Filing No. 15 at 21](#).) It notes that the Supreme Court has held that there are secular, historical reasons for displaying a nativity scene and that "[n]umerous other cases binding on this Court acknowledge the secular purpose of including religious aspects in a larger display to recognize their historical importance," a summary of law with which this Court wholeheartedly agrees. *Id.* But Jackson County stops short of actually saying that its own reasons for displaying the nativity are historical rather than religious. That courts have found non-religious justifications for displaying the nativity is immaterial if Jackson County's objective in this case was religious rather than historical. The Court is not persuaded that Jackson County's display of the nativity passes the purpose test.

Woodring complains of a long-standing practice to erect a nativity scene on the lawn of the Courthouse in Jackson County. After the Freedom From Religion Foundation brought this possible First Amendment violation to Jackson County's attention, Jackson County added two secular elements to the display to attempt to bring it into compliance with the Establishment Clause. And as the Seventh Circuit held in *Concord Community Schools*, a practice that has violated the Establishment Clause in the past can become constitutional if it adds enough secular elements or elements of other religions. The Court is not persuaded that Jackson County's nativity scene, as described in Woodring's Complaint and depicted in the attached photograph, has enough non-religious elements to comply with the Establishment Clause. At this stage of the proceedings, it appears both that the government in Jackson County is endorsing a religion—Christianity—and that it lacks a secular purpose for erecting the nativity scene. Thus, the Court **denies** Jackson County's Motion to Dismiss.

### IV.     CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons, Woodring has survived the initial hurdle of a motion to dismiss. Accordingly, Jackson County's Motion to Dismiss for Failure to State a Claim ([Filing No. 14](Filing No. 14)) is **DENIED**.

**SO ORDERED.**

Date: 9/30/2019

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Stevie Pactor
ACLU OF INDIANA
spactor@aclu-in.org

Susan D. Bevers
LORENZO LAW OFFICE
sdbevers@jefflorenzo.com

Roger Karam Gannam
LIBERTY COUNSEL
rgannam@lc.org

Horatio G. Mihet
LIBERTY COUNSEL
hmihet@lc.org

Daniel J. Schmid
LIBERTY COUNSEL
dschmid@lc.org