UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| REBECCA WOODRING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-00243-TWP-DML |
| ) | |
| JACKSON COUNTY, INDIANA, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AND DENYING DEFENDANT'S MOTION TO STAY FINAL JUDGMENT PENDING APPEAL**

This matter is before the Court on a Motion to Stay Final Judgment Pending Appeal and Request for Expedited Consideration filed by Defendant Jackson County, Indiana ("Jackson County") (Filing No. 71), filed on October 9, 2020. In support of this Motion, Jackson County submitted a declaration by its counsel, Susan Bevers ("Ms. Bevers") (Filing No. 71-1). In reply, Plaintiff Rebecca Woodring ("Ms. Woodring") filed a Motion to Strike Ms. Bevers' declaration, (Filing No. 75), and a response in opposition to the Motion, (Filing No. 76). Jackson County filed a Consolidated Reply in Support of Motion to Stay Final Judgment Pending Appeal and Opposition to Plaintiff's Motion to Strike (Filing No. 77-1). On November 2, 2020, Ms. Woodring filed a Reply Memorandum in Support of Motion to Strike (Filing No. 79). For the reasons stated below, Jackson County's Motion to Stay Final Judgment Pending Appeal is **denied** and Ms. Woodring's Motion to Strike is **denied**.

**I.   DISCUSSION**

**A.   Ms. Woodring's Motion to Strike**

In support of its Motion, Jackson County's counsel, Susan Bevers, filed a declaration that describes and pictorially depicts the Christmas decorations and celebrations located in, on and near

the Jackson County Courthouse grounds. She also expresses concern that any attempt at "balancing" the Display through rearrangement or addition of secular elements could lead to future litigation, and proclaims that removal would cause irreparable harm to the community. (Filing No. 71-1.)

Ms. Woodring argues the Court should strike several portions of the declaration. In particular, she contends photographs and descriptions concerning areas near the Courthouse should be stricken, because any evidence about areas outside the Courthouse grounds is not relevant. (Filing No. 76 at 4.) And Woodring asserts that the portion of the declaration describing the grounds itself should be stricken because broad descriptions of the aspects of the display are not relevant to any purported harm flowing from their removal and the evidence presented is cumulative to that already established at summary judgment. *Id.* at 4–5. Further, she contends the section discussing the possibility of future litigation should be stricken because it is avoidable by complying with this Court's judgment, purely speculative, and impermissibly reliant on litigation as a basis of harm. *Id.* at 5–6. Finally, the Court should strike the portion of the declaration asserting that removal of the display would irreparably harm the community because this question was already resolved on summary judgment and the statements are conclusory and represent impermissible legal conclusions. *Id.* at 6–7.

In response, Jackson County notes that " Woodring neither discussed nor demonstrated that she would be prejudiced by the Bevers Declaration," thus she has not met the burden to demonstrate that the declaration should be stricken. (Filing No. 77-1 at 19.) Additionally, Ms. Woodring fails to cite any "governing rule or circuit precedent" as a basis for her motion—and to the extent that she so moves under Federal Rule of Civil Procedure 12(F), her motion is fatally flawed because that rule can only be "directed at pleadings." *Id.* Further, the images included are

2

"publicly available material" outside the scope of discovery, and the Court should forgive the tardiness of their inclusion, especially when the case has already concluded. *Id.* at 21. The statements made by Ms. Bevers about the holiday celebration's history and presentation are grounded in her "personal knowledge" and relevant to "the deeply rooted tradition of the Brownstown community's celebration of the holidays on the courthouse grounds." *Id.* at 22. These statements should help the Court, Jackson County argues, comprehend that "disrupting Brownstown's longtime traditions through a judicial decree—without the benefit of the forthcoming guidance from the Seventh Circuit—would irreparably harm the local community and be against the public interest." *Id.* As for Ms. Bevers' assertions that the community will potentially face future litigation, Jackson County argues these "statements are reasoned conclusions or inferences based on her knowledge of the background of the dispute, the surrounding circumstances, and Ms. Woodring's own testimony." *Id.* at 24. Finally, Ms. Bevers' statements about the irreparable harm facing Jackson County should not be stricken--"[t]he challenged statements are not improper legal conclusions because they are 'lay opinions' that explain why the nativity scene's removal from the courthouse grounds would adversely affect the local community." *Id.* at 23.

Ms. Woodring, in reply, explains that while Rule 12(f) does not explicitly provide for a court to strike a non-pleading, this "'Court has inherent authority to strike impermissible filings other than pleadings.'" ([Filing No. 79 at 1](#)) (quoting *White v. Department of Justice*, No. 16-cv-948-JPG-DGW, 2019 WL 653151, at *2 (S.D. Ill., Feb. 15, 2019) (citing *Keaton v. Hannum*, No. 1:12-cv-00641-SEB, 2013 WL 1800577, at *1 (S.D. Ind. Apr. 29, 2013))).

At the outset, it is not clear that the relief Ms. Woodring seeks is available under the Federal Rules of Civil Procedure.

> Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The court may either strike on its own or on a motion by a party and has considerable discretion in striking any redundant, immaterial, impertinent or scandalous matter.

*Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). The district court's decision on a motion to strike should not be arbitrary or unreasonable. *Id.* "[T]he general rule [is] that motions to strike are disfavored. *Crowder v. Foster Wheeler*, LLC, 265 F.R.D. 368, 370 (S.D. Ind. 2009). This is because motions to strike potentially serve only to delay. But where, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (internal citation omitted).  Rule 12(f) relates to matters to be stricken *from pleadings*.  Rule 7 of the Federal Rules of Civil Procedure enumerates the "pleadings . . . allowed" as a complaint, a counterclaim, a crossclaim, and a third-party complaint; an answer to each of those filings; and, if ordered by the court, a reply to an answer. So, because "Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a)[,] motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)." 5C C. Wright & A. Miller, Federal Practice and Procedure § 1380 (3d ed.).

      Rule 12(f) aside, the court carries intrinsic authority to strike filings outside of the pleadings context contemplated by that rule.  But this power should generally be wielded in limited circumstances and is generally disfavored.  *See, e.g., Keaton*, 2013 WL 1800577, at *1 (striking statements in response to motion for protective order that were "both immaterial and have the *potential to embarrass* [the defendant]") (emphasis added).  Despite the substantive strength of

Ms. Woodring's argument[1], the Court elects to exercise caution in exerting its inherent power to strike filings. Accordingly, the Court **denies** Ms. Woodring's Motion to Strike (Filing No. 75).

B.     **Jackson County's Motion to Stay Final Judgment**

In deciding whether to grant Jackson County's Motion to Stay Final Judgement, the Court must

> determine whether the party seeking the stay has demonstrated that: 1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without relief is greater than the harm the opposing party will suffer if the stay is granted; and 5) the stay will be in the public interest.

*Hinrichs*, 440 F.3d at 396. The Court will first examine the merits of the case then move on to assessing irreparable harm and the other factors.

    1.     **Likelihood of success on the merits**

        a.     **Standing**

Plaintiffs have standing to sue in these cases when they "allege that they must come into direct and unwelcome contact with [challenged displays] in order to participate in their local government and fulfill their legal obligations." *Doe v. Cty. of Montgomery, Ill.*, 41 F.3d 1156, 1161 (7th Cir. 1994). Ms. Woodring must, in order to exercise her right to receive child support, "see the lawn of the Courthouse facing Main Street when [she goes] to the Prosecutor's office."

---

[1] First, evidence portraying holiday décor on and near the Courthouse grounds—aside from any consideration of whether this late production violates Federal Rule of Civil Procedure 26(e)(1)—is not relevant to any merits or irreparable harm inquiry demanded by stay requests. *See Hinrichs v. Bosma*, 440 F.3d 393, 402 (7th Cir. 2006) (noting that, along with likelihood of success on the merits, a "main consideration in deciding whether to grant a stay is the [defendant's] submission that [it] will be harmed irreparably in the absence of one."). Second, the potential for future litigation is insufficient to demonstrate the potential for imminent injury as necessitated to order a stay—at this time, this harm is merely speculative. *See Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 846 n.3 (7th Cir. 2005) (citing *Singer Co. v. P.R. Mallory & Co.*, 671 F.2d 232, 235 (7th Cir. 1982) ("Even if unemployability could be considered an irreparable injury, [the plaintiff] has not presented adequate facts to make this more than a 'speculative' harm.")). Last, Ms. Bevers' allegation that "[e]xcluding the Display from Brownstown's holiday celebrations this year would irreparably harm both the County and the local public", (Filing No. 71-1 at 11), is conclusory in both fact and law. *See Montgomery v. Am. Airlines, lnc.*, 626 F.3d 382, 389 (7th Cir. 2010) (explaining that testimony must be based on personal knowledge and "mere conclusory allegations do not constitute evidence"); *Holman v. Revere Elec. Supply Co.*, 154 F. App'x 501, 503–04 (7th Cir. 2005) (noting the impropriety of legal conclusions).

([Filing No. 32-2 at 3](#).)  Although this office is in the adjacent judicial center, and not inside the historical Courthouse itself, Ms. Woodring is forced to view the yard where the crèche is displayed when she passes by the Courthouse to fulfill her legal obligations at the nearby building.  This injury—resulting from the direct contact she must endure by visiting the Jackson County Prosecutor's Office—confers Ms. Woodring standing to allege that the display violates the Establishment Clause.  Jackson County, accordingly, has not demonstrated a likelihood of success on its appeal of this issue that is squarely supported by binding Seventh Circuit precedent.

        **b.**    **Establishment Clause**

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion."  To advance a claim under this provision, a plaintiff "must indicate in which way the government has transgressed the Constitution: through impermissible endorsement of a religious view, through coercion, or through a forbidden religious purpose." *Mayle v. United States*, 891 F.3d 680, 684 (7th Cir. 2018) (citing *Freedom From Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1045 (7th Cir. 2018)), *cert. denied*, 139 S. Ct. 823 (2019).

First, the "endorsement" test looks to "whether the government is pushing for the adoption of a particular religion." *Id.*  Under this test, courts must "look at the totality of the circumstances surrounding the challenged conduct from the perspective of a reasonable observer." *Concord Cmty. Sch.*, 885 F.3d at 1046 (citing *Books v. Elkhart Cnty.*, 401 F.3d 857, 867 (7th Cir. 2005).  This reasonable observer knows about "a situation's history and context." *Id.* (citing *Cty. of Allegheny v. Am. Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 620 (1989), *abrogated on other grounds by Town of Greece, N.Y. v. Galloway*, 572 U.S. 565 (2014)).  Here, the Nativity scene is flanked by Santa Claus and a group of Christmas carolers.  ([Filing No. 32-1](#)

at 72.)  Because the crèche straddles the sidewalk subdividing the lawn and the more-secular figures are placed on the periphery, the venerable magi and hallowed manger share center stage. *Id.*  Since the primary focus of the display is a celebration of the birth of Jesus Christ, a reasonable observer would believe that Jackson County was endorsing a particular religion, that is, Christianity.  *Id.*  Moreover, the display—which had consisted solely of the Nativity scene for almost twenty years—expanded to include the secular Christmas figures only after Jackson County received a letter from the Freedom from Religion Foundation questioning whether the display was constitutional.  *Id.* at 17–18, 28, 72.  A reasonable observer aware of this "history and context" would view the addition of the ancillary figures as a reactionary effort to obscure the display's religious essence.  *Concord Cmty. Sch.*, 885 F.3d at 1046.

Second, the "coercion" test asks courts to "look to see whether the government has coerced the plaintiff to support or participate in religion."  *Mayle*, 891 F.3d at 685 (citing *Town of Greece, N.Y.*, 572 U.S. at 586).  Use of this test ordinarily arises when individuals are either encouraged or compelled to participate in religious activities.  *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577, 593 (1992) (holding coercion inconsonant with the Establishment Clause when a "school district's supervision and control of a high school graduation ceremony places public pressure, as well as peer pressure, on attending students to stand as a group or, at least, maintain respectful silence during the invocation and benediction").  This test, with no external pressure applied to Ms. Woodring to oblige her to act, is a poor fit for this case.  That aside, its application cuts in favor of Jackson County: viewing the display does not force passersby like Ms. Woodring to actively participate in religious conduct.

Third, the "purpose" test asks whether a practice "lacks a secular objective."  *Concord Cmty. Sch.*, 885 F.3d at 1049 (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).  Though

7

courts "defer to a government's statement of its own aims," any stated purpose cannot be "a sham or secondary to a religious goal." *Id.* (citing *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 864 (2005). For almost twenty years, the solitary crèche stood on the lawn, unaccompanied by other symbols of Christmas gaiety. In 2001, a Jackson County official apologized specifically for failing to place a "nativity scene," rather than holiday decorations or Christmas decorations, on the Courthouse lawn. ([Filing No. 32-1 at 67](#).) Before then, figures borrowed from a local church adorned the lawn. *Id.* at 13. On top of this, the current Nativity figures displayed on the Courthouse lawn were purchased by a religious organization. *Id.* at 70. Jackson County tries to annul these facts, however, by comparing its case to one where the United States Supreme Court recently held that a nearly ninety-year-old, forty-foot tall concrete cross does not violate the Establishment Clause because it has historical importance beyond its "undoubtedly" Christian symbolism. *American Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2090 (2019). But this attempted analogy misses the mark: the massive, historic cross in *American Legion* had come to represent "a symbolic resting place for ancestors who never returned home," "a place for the community to gather and honor all veterans and their sacrifices for our Nation," and "a historical landmark." *Id.* Here, the portable, twenty-year-old crèche serves none of these independently secular ends. Because the only evidence in the record indicates that Jackson County's sole reason for presenting the Nativity scene was religious, the display does not pass the purpose test.

Because it fails the two tests outlined by the Seventh Circuit to analyze Establishment Clause cases best suited to this circumstance, the Court concludes that Jackson County has little chance of success on the merits of its appeal.

### 2.     Irreparable harm and other factors

Jackson County argues that it will suffer irreparable harm from the Court enjoining it "'from displaying *a* Nativity scene as presented, on the historical Courthouse lawn during the winter holidays and at any other time.'" (Filing No. 72 at 6 (quoting Filing No. 64) (Jackson County's emphasis); Filing No. 77-1 at 6 (arguing that the County and "public interest is not served by a *complete ban* of the nativity scene from the courthouse grounds" (emphasis added)).)  In other words, Jackson County attempts to cast the Court in the part of a Grinch foreclosing all holiday cheer: "the injunction necessarily and practically forces the County to prohibit the entire Display during the upcoming holiday season." (Filing No. 72 at 11; *see Concord Cmty. Sch.*, 885 F.3d at 1053 ("The parties put us in the uncomfortable role of Grinch, examining the details of an impressive high school production.")). Without a stay, Jackson "County's operations and local community relations, customs, and cherished traditions" would be disastrously disrupted (Filing No. 77-1 at 11).  Not so.  Notably, the Court enjoins display of "a Nativity scene *as presented*." (Filing No. 64 (the Court's emphasis added); *see also* Filing No. 63 at 23 ("Jackson County is hereby enjoined from displaying the crèche *as presently presented*, on the lawn of the historical Courthouse.") (emphasis added).)  This ruling does not wholly bar Jackson County's display of the crèche.  Instead, it prohibits it from proceeding with the scene "as presented," that is, centered around and focusing on the celebration of the birth of Jesus. That Ms. Woodring may have indicated she wished for the wholesale removal of the Nativity scene is of no consequence (*see* Filing No. 77-1 at 9–11). Additionally, the focused order—which does not prohibit Jackson County from exhibiting the Nativity and instead allows it to bring the display, including the crèche or not, into consonance with the Establishment Clause—also protects the public's interest in enjoying a community holiday celebration that constitutionally observes both the secular and

9

sacred elements of Christmastime.  The Court's heart has not grown three sizes; Jackson County has just presented a selectively read and emphasized version of its prior ruling.

As for balancing the prospective harm the parties face based on the Court's decision to either grant or deny the stay, Jackson County argues that a stay would not harm Ms. Woodring because she "failed to even notice the Display in the previous two winters that she was a resident of Jackson County" and because she "did not even seek a preliminary injunction after she filed this lawsuit in 2018, thus allowing the Display to continue in 2019."  (Filing No. 72 at 12.)  According to Jackson County, Ms. Woodring "has never suffered any concrete or particularized harm from the Display."  (Filing No. 77-1 at 12.)  But,

> [t]he injury here is to the free use of the city's streets and sidewalks. The limitation as to who may sue is due not to some idea that the injury inflicted by violations of the establishment clause is inconsequential but to the fact that it is such a diffuse injury that a choice among potential plaintiffs is necessary.

*Am. Civil Liberties Union of Illinois v. City of St. Charles*, 794 F.2d 265, 275 (7th Cir. 1986).  In other words, when looking at the harm inflicted a plaintiff under the Establishment Clause, a "court is not confined to the particular harm on which the plaintiff's standing to sue is based" and can instead also "consider the effect of the defendant's conduct on the interests protected by the clause" in general. *Id.* Considering the minute potential for harm befalling Jackson County discussed above, the harm in granting the stay to Ms. Woodring—and the interests protected by the Establishment Clause—far outweighs the harm in denying it to Jackson County.

Altogether, weighing the factors used to determine whether to grant a stay pending appeal, the Court determines that staying final judgment is unwarranted and **denies** Jackson County's Motion.

### C. Jackson County's Request for Expedited Consideration

As a final matter, the Court has **granted** Jackson County's request for expedited consideration, but questions why Jackson County waited until the eleventh hour to file the instant Motion. Final judgment was entered in this matter on April 29, 2020, (Filing No. 64). Jackson County filed its Notice of Appeal about a month later on May 26, 2020, (Filing No. 67). The appellate matter is fully briefed, with oral argument set before the Seventh Circuit on November 12, 2020. Jackson County filed this stay request on October 9, 2020—more than five months after the Court's entry of Final Judgment—stating "[a]n expedited decision by November 5, [2020] is necessary and respectfully requested so that the County has sufficient time to seek a stay from the Seventh Circuit Court of Appeals pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure, should that become necessary." (Filing No. 72 at 16.) It appears that Jackson County's lack of planning now constitutes an emergency for the Court and opposing counsel. Though "Christmas is not in July" (Filing No. 77-1 at 10), nothing stopped Jackson County from requesting "immediate relief" earlier than by November. The Southern District of Indiana is statistically the second busiest District Court in the nation, and the undersigned judge has 555 open civil cases, 163 pending criminal defendants, and 406 pending motions to consider. Last minute requests for expedited rulings significantly deplete judicial resources and distract from the many other equally-important criminal defendants and civil litigants before the Court. Counsel are reminded that emergency filings must be for true emergencies and timely fillings are greatly appreciated.

## II. CONCLUSION

For the reasons explained above, the Court **GRANTS** Jackson County's Request For Expedited Consideration but **DENIES** the Motion to Stay Final Judgment Pending Appeal, (Filing No. 71). The Court further **DENIES** Woodring's Motion to Strike, (Filing No. 75).

**SO ORDERED.**

Date: 11/3/2020

                                            Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Stevie Pactor
ACLU OF INDIANA
spactor@aclu-in.org

Roger Karam Gannam
LIBERTY COUNSEL
rgannam@lc.org

Horatio G. Mihet
LIBERTY COUNSEL
hmihet@lc.org

Daniel J. Schmid
LIBERTY COUNSEL
dschmid@lc.org

Susan D. Ms. Bevers
LORENZO LAW OFFICE
sdbevers@jefflorenzo.com